USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/13/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEJUAN CALLENDER,

    Petitioner,

-against-

CHRISTOPHER SHANAHAN, et al.,

    Respondents.

17-CV-613 (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Petitioner Dejuan Callender was a lawful permanent resident (LPR) of the United States when he was convicted of a felony in 1999. An order of removal was entered against him in 2005 and became final in 2006. Since July 1, 2015, Callendar has been detained pending deportation, pursuant to 8 U.S.C. § 1231(a), by United States Immigration and Customs Enforcement (ICE), a division within the Department of Homeland Security (DHS). On January 26, 2017, he filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. No. 1.) For the reasons set forth below, the petition is DENIED.

## BACKGROUND

Callender is a citizen of Barbados who entered the United States as an LPR in 1979, at the age of five, and has resided here since. Pet. ¶¶ 1, 9. His wife and son are United States citizens, and his father and five siblings are all either LPRs or citizens. *Id.* ¶ 9. Callender asserts on information and belief that he has no family in Barbados. *Id.*

On November 19, 1999, Callender was convicted of one count of trafficking in a counterfeit access device in violation of 18 U.S.C. § 1029(a), a Class C felony. Pet. ¶ 11 & Ex. D. He was sentenced to three years of probation and ordered to pay a fine. *See* Pet. Ex. D (Dkt. No. 1-1, at ECF pages 15-16); Decision of Immigration Judge Annie S. Garcy dated June 21, 2005 (IJ

Decision) (Dkt. No. 7-1), at 3. While still on probation, Callender was arrested and charged with disorderly conduct, reckless driving, and related traffic violations, and pled guilty to the disorderly conduct charge on June 18, 2002. Pet. ¶ 11 & Ex. D. The same incident led to the revocation of his federal probation and a 90-day prison sentence, followed by three years of supervised release. Pet. Ex. D, at ECF pages 17-19; IJ Decision at 4. In 2016, Governor Andrew Cuomo of New York pardoned the 2002 conviction. Pet. ¶ 11 & Ex. D; Mem. in Supp. dated Feb. 21, 2017 (Dkt. No. 7), at 3; Declaration of Deportation Officer Luis A. Kow, dated April 26, 2017 (Dkt. No. 12), ¶ 35.

### A.     Removal Proceedings: 2004 to 2006

On April 15, 2004, upon arriving at Newark Liberty International Airport on a flight from Barbados, Callender applied for readmission to the United States as an LPR. He was denied readmission and served with a Notice to Appear (NTA) (Dkt. No. 11-1), which alleged, based on his felony counterfeit access device conviction, that he was "an alien who has been convicted of . . . a crime involving moral turpitude" under Section 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(2)(A)(i)(I). NTA at 2-3. On June 7, 2004, ICE filed the NTA with the Immigration Court in Newark, New Jersey and placed Callender in removal proceedings on the non-detained docket. *See* IJ Decision at 1; Kow Decl. ¶ 5.

On September 4, 2004, Callender appeared before IJ Garcy, with counsel, admitted the allegations in the NTA, and applied for cancellation of removal and for admission as a returning resident. IJ Decision at 1. On June 21, 2005, Judge Garcy denied both applications and ordered Callender removed. *Id.* at 8. The Board of Immigration Appeals (BIA) dismissed Callender's timely appeal on December 28, 2006, rendering his removal order administratively final. Resp. Return (Dkt. No. 11) Ex. 3; Kow Decl. ¶ 6. The BIA found, among other things, that Callender "has failed to take the criminal justice system seriously, he has a history of deceit, and a lack of

respect for authority." Resp. Return Ex. 3, at 1. Callender did not seek judicial review of the final removal order. Nonetheless, he remained in the United States. Resp. Mem. in Opp., dated March 15, 2017 (Dkt. No. 13), at 2.

During the decade that followed Judge Garcy's removal order, Callender obtained and held a steady job, filed income tax returns annually, fathered a child, and avoided any further encounters with the criminal justice system. *See* Pet. at Exs. B, F, G; Mem. in Supp. at 11; *id.* Ex. B (at ECF Page 10); *id.* Ex. D. On December 30, 2016, when announcing the pardon of Callender's 2002 conviction, Governor Cuomo cited his "rehabilitation" and noted that several residents of the building where Callender worked as a doorman "attest to his work ethic and good character." *See* https://www.governor.ny.gov/news/governor-cuomo-grants-first-ever-conditional-pardons-more-100-new-yorkers-convicted-crimes-ages (last visited Dec. 13, 2017). The New York pardon did not affect Callender's federal felony conviction.

## B.     Removal Proceedings: 2015 to Present

ICE arrested Callender on July 1, 2015. Kow Decl. ¶ 7; Pet. ¶¶ 1, 16.[1] Callender has been detained since his arrest, Kow Decl. ¶ 7, in several locations, including Alabama, New Jersey, and, since July 8, 2016, in the Orange County Jail in Goshen, New York. *See* Mem. in Supp. at 6 n.1; Supplemental Declaration of Deportation Officer Luis A. Kow, dated April 26, 2017 (Dkt. No. 21), ¶ 4. On August 3, 2016, while detained in the Orange County Jail, Callender married Dina Briggs, a United States citizen. Pet. ¶ 10 & Ex. B; *see also* Mem. in Supp. at 6; Resp. Mem. in Opp. at 4; Kow Decl. ¶ 25.

---

[1] The government offers no explanation for the lengthy delay in effecting Callender's arrest after the order of deportation became final. It does not contend (nor does the record support) that petitioner took any steps to conceal his identity or whereabouts during those nine years.

3

Since his arrest, Callender has filed multiple applications challenging the order of removal against him, including: (a) a request for a stay of removal, which ICE denied on September 2, 2015, Resp. Return, Ex. 4; (b) three motions to reopen the removal proceedings, all of which have been denied by the BIA[2]; (c) a motion to reconsider the BIA's denial of his second motion to reopen, which the BIA denied on January 5, 2017, Pet ¶ 14; Resp. Return, Ex. 8; (d) a Form I-601 Waiver of Grounds of Inadmissibility, together with a Form I-485 Application for Adjustment of Status, both of which were denied on May 2, 2017 by the United States Citizenship and Immigration Services (USCIS), *see* Pet. Ltr. dated June 13, 2017 (Dkt. No. 23), at 1 & Ex. A (ECF Pages 1 to 3, 10 to 15); (e) Forms I-601 and I-485 (again) with additional documentation, *id.*, at 1 & Ex. B, which USCIS denied (again) on July 12, 2017 and August 14, 2017, respectively, Jnt. Ltr. dated Oct. 5, 2017 (Dkt. No. 26) & Att. 1 (Dkt. No. 26-1); (f) an appeal of both USCIS denials to the USCIS Administrative Appeals Office, which remain pending, *id.*, at 1; and (g) a Petition for Review, filed in the Second Circuit, of the BIA's April 21, 2017 denial of his third motion to reopen. Pet. Ltr. dated June 13, 2017, at 2; Resp. Ltr. dated June 13, 2017; Jnt. Ltr. dated Oct. 5, 2017, at 1. On December 6, 2017, the Second Circuit granted the government's unopposed motion to transfer the Petition for Review to the Third Circuit. Merits briefs have yet to be filed.

During petitioner's detention, ICE has conducted periodic reviews of his custody status pursuant to 8 C.F.R. § 241.4. Each time, ICE has decided to continue his detention. *See* Resp. Ret. ¶ 6 & Ex. 5 (ICE custody decisions dated Sept. 21, 2015, January 8, 2016, April 11, 2016, and July 21, 2016); Jnt. Ltr. dated Oct. 5, 2017, Ex. 1 (ICE custody decision dated June 19, 2017).

---

[2] Callender filed his first motion to reopen with the BIA on February 26, 2016. Pet. ¶ 12. ICE denied the motion as untimely on April 19, 2016. *Id.*; Resp. Return, Ex. 6. Callender filed his second motion to reopen on July 25, 2016, and the BIA denied it on September 26, 2016. Pet. ¶ 13; Resp. Return, Ex. 7. He filed the third motion on January 27, 2017, Pet. ¶ 15, and the BIA denied it on April 21, 2017. *See* Resp. Ltr. dated June 13, 2017 (Dkt. No. 24) at Ex. 1.

4

Over the same period, ICE has made multiple attempts to procure a travel document for Callender to return to Barbados. On August 3, 2015, an ICE officer "appeared at the Consulate of Barbados and presented the necessary documents for issuance of a travel document." Kow Decl. ¶ 8. On September 11, 2015, the Consulate "interviewed Callender for the purpose of issuing a travel document," but, according to respondents, "Callender claimed that he had an immigration petition pending, and the consulate advised that it would delay issuing a travel document if Callender presented proof of a pending petition." *Id.* ¶ 10. The Consulate further "advised," several times in the fall of 2015, that "it would issue a travel document" after USCIS "adjudicated Callender's pending petition." *Id.* ¶¶ 11, 13.

On November 5, 2015, ICE contacted the Consulate "regarding the status" of the travel document (which Callender, through his attorney, had requested the previous month), Kow Decl. ¶¶ 14, 15, and on January 16, 2016, an ICE officer "met with an official from the Barbados Embassy and requested that a travel document be issued." *Id.* ¶ 18. The official advised that the Embassy was in possession of "motion to reopen paperwork" drafted (but not yet filed) by Callender's attorney, and agreed to re-interview Callender "regarding the status of his motion to reopen." *Id.* ICE officials brought Callender to their Varick Street office for that purpose on January 27, 2016, but, according to respondents, petitioner "refused to speak with a consular official." *Id.* ¶ 19.[3] ICE "scheduled Callender to be removed via charter on April 26, 2016," *id.* ¶ 21, but subsequently cancelled that plan "for lack of a travel document." *Id.* ¶ 24.

---

[3] Petitioner asserts that he has "assisted DHS" in attempting to secure a travel document, has "provided ICE with his birth certificate," and has otherwise "continuously cooperated with Respondents." Mem. in Supp. at 11. *See also* Reply Mem. dated March 30, 2017 (Dkt. No. 17), at 4; Declaration of Dina Briggs dated March 30, 2017 (Dkt. No. 17-1), ¶ 2. Petitioner does not specifically address the January 27, 2016 incident.

5

Thereafter, ICE communicated regularly with the Consulate of Barbados, which advised each time that it awaited resolution of Callender's pending immigration proceedings. Kow Decl. ¶ 26 (July 7, 2016), ¶ 31 (October 28, 2016), ¶ 32 (November 16, 2016), ¶ 33 ("four occasions" in December 2016), ¶ 34 (December 29, 2016), ¶ 37 (January 12, 2017), ¶ 40 (February 16, 2017), ¶ 41 (February 23, 2017). In a letter dated March 2, 2017 (Dkt. No. 11-10), written at respondents' request, the Consul General of Barbados confirmed that the Consulate will issue a travel document for Callender "upon resolution of his pending [immigration] litigation, if still necessary."

### C. The First Habeas Proceeding

On December 11, 2015, while detained in New Jersey, Callender filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey. Pet. ¶ 17. On July 14, 2016, the Hon. Jose L. Linares denied the petition, finding that it was "very likely that Petitioner will be removed from the United States in the reasonably foreseeable future." *Callender v. Aviles*, No. 15-CV-8579, slip op. at 7 (D.N.J. July 14, 2016).[4]

### D. This Proceeding

Callender filed the instant petition on January 26, 2017. The Honorable Paul G. Gardephe, United States District Judge, referred the matter to me for report and recommendation on April 26, 2017. (Dkt. No. 20.) The parties conducted oral argument on June 20, 2017, and thereafter consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. No. 25.)

---

[4] In his opinion denying the petition, Judge Linares stated that "a travel document has now been acquired," attributing that information to petitioner's counsel. Slip op. at 7, 8. In petitioner's brief to this Court, counsel asserts that he was "misinformed," that in fact no travel document had been issued by the Barbados Consulate, and thus that the New Jersey decision was based in part on erroneous information inadvertently provided by counsel. Mem. in Supp. at 5.

6

## DISCUSSION

### I. Legal Standards

The detention of a non-citizen subject to a final order of removal is governed by 8 U.S.C. § 1231, which directs the Attorney General to "remove the alien from the United States within a period of 90 days," known as the "removal period," 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of three dates including, as relevant here, the "date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). The parties agree that the order of removal against Callender became "administratively final" for the purposes of 8 U.S.C § 1231(a)(1)(B)(i) on December 28, 2006, when the BIA dismissed Callender's appeal. *See* Pet. at 2, ¶¶ 19-27; Mem. in Supp. at 7-9; Resp. Mem. in Opp. at 1, 8-9.

Detention is mandatory for the 90-day removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). Thereafter, section 1231(a)(6) authorizes the Attorney General to detain three classes of persons "beyond the removal period" (including those who, like Callender, have been found "inadmissible" under § 212 of the INA, 8 U.S.C. § 1182), subject to periodic custody reviews conducted by ICE pursuant to 8 C.F.R. 241.4. The regulations governing the custody reviews provide that if it is established, "at any stage" of the review, that "travel documents can be obtained, or such document is forthcoming, the alien will not be released unless immediate removal is not practicable or in the public interest." 8 C.F.R. 241.4(g)(3). The regulations also provide that there is no appeal from an ICE custody review. *Id.* § 241.4(d).

In *Zadvydas v. Davis*, 533 U.S. 679 (2001), the Supreme Court avoided the "serious constitutional threat" presented by a "literal" interpretation of 8 U.S.C. § 1231(a)(6), which could authorize "indefinite, perhaps permanent, detention" in some circumstances, *id.* at 688, 699, and

7

held that § 1231(a)(6) "authorizes the Attorney General to detain a removable alien . . . only for a period *reasonably necessary* to secure the alien's removal." *Id.* at 682 (emphasis in original). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court recognized a six-month "presumptively reasonable period of detention." *Id.* at 701. "[A]fter that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" *Clark v. Martinez*, 543 U.S. 371, 378 (2005) (quoting *Zadvydas*, 533 U.S. at 701).[5] See also *Zadvydas*, 533 U.S. at 689 (After six months, if a non-citizen subject to a removal order "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

The "6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Zadvydas*, 533 U.S. at 701. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Thus, *Zadvydas* "places an initial burden on the detainee" to establish that the "no significant likelihood" standard has been met. *Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017). "Only if he makes this initial showing does the burden shift back to the government, which 'must respond with evidence sufficient to rebut that showing.'" *Beckford v. Lynch*, 168 F. Supp. 3d 533, 539 (W.D.N.Y. 2016) (quoting *Zadvydas*, 533 U.S. at 701). "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [] shrink[s]," *Zadvydas*, 533 U.S. at 701, but the "mere passage of

---

[5] In *Clark*, 543 U.S. at 378, the Court extended *Zadvydas* to aliens who, like petitioner Callender, were ordered removed after having been found "inadmissible" under § 212 of the INA, 8 U.S.C. § 1182. *Zadvydas* therefore applies here.

8

time" is "insufficient," standing alone, "to meet the petitioner's initial burden to demonstrate no significant likelihood of removal." *Beckford*, 168 F. Supp. 3d at 539 (collecting cases).

In order to satisfy his burden under *Zadvydas*, the petitioner must present more than "mere assertions that removal is unforeseeable." *Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009). Unsupported allegations that the relevant embassy or consulate "will not issue a travel document in the foreseeable future" are insufficient. *Id.* Nor is it sufficient for the petitioner to show that the government has been unable to obtain a travel document to date. He must also establish that the bottleneck is not due to his own continuing efforts to litigate his removal. A "self-inflicted wound should not establish grounds for [petitioner's] *Zadvydas* claim." *Abimbola v. Ridge*, 181 Fed. App'x 97, 99 (2d Cir. 2006) (summary order) (affirming denial of habeas petition where Nigerian national had been "detained well beyond the six-month period," but only because of his "numerous petitions for reconsideration and appeals," which caused the Nigerian embassy to withhold a travel document it would otherwise have issued); *accord Zheng v. Decker*, 618 F. App'x 26, 28 (2d Cir. 2015) (summary order) (affirming denial of petition where the government was "prevented from removing Zheng" because of his various motions to stay his removal, some of which remained pending); *Agoro v. Dist. Dir. for Immigration Custom Enf't*, 2010 WL 9976, at *5 (S.D.N.Y. Jan. 4, 2010) (denying petition where both past delays and potential future delays in removing alien were "caused by Agoro's own actions").[6]

---

[6] In *Zadvydas*, by way of contrast, the government was "unable to remove the aliens because no country was willing to accept them." *Turkmen v. Ashcroft*, 589 F.3d 542, 548 (2d Cir. 2009). Kestutis Zadvydas was born to Lithuanian parents in a displaced persons camp in Germany. *Zadvydas*, 533 U.S. at 684. After his order of deportation became final, neither Germany nor Lithuania would accept him, notwithstanding that Zadvydas applied for Lithuanian citizenship based on his parents' nationality. *Id.* The government's efforts to deport Zadvydas to the Dominican Republic, his wife's country, were also unsuccessful. *Id.* Kim Ho Ma, whose case was consolidated with Zadvydas's for review, was born in Cambodia, which has no repatriation treaty with the United States. *Id.* at 686.

9

## II. Analysis

Callender has now been detained pursuant to 8 U.S.C. § 1231(a) for almost two and a half years, pursuant to an order of deportation that became final eleven years ago. These facts alone, however, do not entitle petitioner to habeas relief. *Beckford*, 168 F. Supp. 3d at 539. His petition cannot be granted unless it provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

Petitioner argues that the "presumptively reasonable" period of detention "elapsed nearly a decade ago," that is, six months after the order of removal became administratively final. Mem. in Supp. at 10, 20; Reply Mem. at 3. Thus, in Callender's view, the government has "been unable to secure a travel document" for "over approximately ten (10) years," Mem. in Supp. at 15, which in turn shows that his removal is not "reasonably foreseeable" under *Zadvydas*. *Id.*

Callender is confusing the 90-day "removal period" under 8 U.S.C. § 1231(a)(1)(A), which began when his order of removal became final in 2006, *see id.* § 1231(a)(1)(B), with the six-month "presumptively reasonable period of detention" under *Zadvydas*, 533 U.S. at 701, which could not have begun until he was detained by ICE in 2015. This result is compelled not only by the language of *Zadvydas* but also by its logic. It is the prospect of indefinite "detention" that led the Supreme Court to create the six-month presumption. *Id.* at 682; *see also id.* at 689 (read "in light of the Constitution's demands," § 1231(a)(6) "does not permit indefinite detention"); *Beckford*, 168 F. Supp. 3d at 536 ("In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling [the] apparent authorization of indefinite detention [under § 1231(a)(6)] with the Fifth Amendment's prohibition against depriving a person of their liberty without due process."). Delays in effecting the deportation of a non-detained alien do not implicate the alien's liberty interests and

10

thus do not raise the same "serious constitutional concerns." *Zadvydas*, 533 U.S. at 682.[7]

Even if petitioner were correct as to when the six-month presumptively reasonable period of detention began, however, he would not be entitled, on the present record, to the writ he seeks. *See Agoro*, 2010 WL 9976, at *4 (quoting *Zadvydas*, 533 U.S. at 701) (holding that the court "need not decide" when the period of detention began in order to determine whether petitioner had met his burden of showing that there was "no significant likelihood of removal in the reasonably foreseeable future"). The passage of time alone does not entitle an alien to release. *Zadvydas*, 533 U.S. at 701. Regardless of the length of the detention to date, "*Zadvydas* places the burden of proving that there is no significant likelihood of removal in the reasonably foreseeable future on the alien." *Agoro*, 2010 WL 9976, at *4. *Accord Pineda*, 258 F. Supp. 3d at 379 (because *Zadvydas*

---

[7] The Court recognizes that the Second Circuit has not spoken on this issue, and the district courts have come to inconsistent conclusions. *Compare, e.g., Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 499-500 (S.D.N.Y. 2009) (holding that both the "removal period" under § 1231(a)(1) and the "'presumptively reasonable' detention period" under *Zadvydas* began to run when petitioner's removal order became final, even though ICE did not detain her until 15 months later) *with Dogra v. Immigration Customs Enf't*, 2009 WL 2878459, at *3 & 2 n.2 (W.D.N.Y. Sept. 2, 2009) (assuming that the "six month presumptive period of permissible detention" under *Zadvydas* began to run when petitioner was taken into custody by ICE for the second time in 2008, notwithstanding that he was ordered removed in 1995, and detained by ICE for six months in 2005). Both within and without our Circuit, however, most district courts have concluded – as does this Court – that *Zadvydas* meant what it said: six months is the presumptively reasonable period of "detention" after the entry of a final order of removal. 533 U.S. at 701. *See, e.g., Rodriguez-Guardado v. Smith*, 2017 WL 4225626, at *5 n.8 (D. Mass. Sept. 22, 2017) ("Petitioner's contention that the *Zadvydas* clock runs while he is not in custody defies common sense") (internal quotation marks and citation omitted); *Chun Yat Ma v. Asher*, 2012 WL 1432229, at *3 (W.D. Wash. Apr. 25, 2012) ("Detention is the core issue in *Zadvydas*, and Petitioner was not detained until May 9, 2011," even though his order of removal became final in 2006); *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011) ("Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody.") (emphasis in the original). *See also Lin v. Holder*, No. 10-CV-4316, slip op. at 11-12, 14 (S.D.N.Y. July 12, 2010) (noting that "the reasonableness of an alien's continued detention under *Zadvydas* is not triggered until the alien has been detained for at least six months," distinguishing *Farez-Espinoza* on its facts, and holding that Lin was not entitled to *Zadvydas* relief because he "has been detained for less than 90 days," notwithstanding that he was ordered removed 15 years earlier).

11

always "places an initial burden on the detainee," the government is not required to "reevaluate a detainee's entitlement to bond every six months with no showing required from the detainee"); *Beckford*, 168 F. Supp. 3d at 539 (collecting cases).

Here, while it is undisputed that the government has been unable thus far to obtain a travel document from the Barbados Consulate, there is substantial evidence that petitioner can and will be removed as soon as his pending immigration proceedings – all of them filed by petitioner himself – are resolved. The Consulate of Barbados has acknowledged that he is a citizen of that country, has shown no unwillingness to repatriate him, and has cooperated with ICE regarding the removal. *See* Kow Decl. ¶¶ 10-11, 18, 26, 31, 37, 41. Barbados has a repatriation agreement with the United States and a record of accepting repatriated citizens.[8] Moreover, the Consulate has repeatedly assured ICE that it will issue a travel document once Callender's immigration proceedings are resolved, *see* Kow Decl. ¶¶ 11, 13, 18, 31, 40, 43, and recently confirmed its willingness to do so in writing. *See* Consulate Letter dated March 2, 2017, at 1 ("the said document will be issued on resolution of the pending litigation"). In sum, "[t]he request for a travel document for petitioner remains pending with the Consulate, and there is nothing in the record before the court to indicate that [the relevant] authorities are inclined to deny the request." *Beckford*, 168 F. Supp. 3d at 539.

In this case, as in *Agoro*, the issuance of the travel documents required for removal has been delayed only by the pendency of petitioner's many challenges to the order of removal against him. Callender freely acknowledges this point, *see* Reply Mem. at 5 ("Essentially, as long as

---

[8] *See Harvey v. Homeland Sec. (BICE)* 2006 WL 314528, at *2 (D. N.J. Feb. 9, 2006) ("Barbados has a repatriation agreement with the United States and has not refused to admit petitioner upon his removal from the United States."); *Worrell v. Ashcroft*, 207 F. Supp. 2d 61, 70 (W.D.N.Y. 2002) (finding that Petitioner could not show any impediment to his removal to Barbados).

12

Petitioner pursues his Constitutional right to exhaust his legal options in order to remain in the United States, *then* the consulate *will not* issue a travel document.") (emphasis in the original), and on this basis characterizes his case as raising a "novel" constitutional issue. *Id.* at 6. It is well-settled, however, that an alien cannot, through unilateral action, create the very circumstance that he relies on for relief under *Zadvydas*. *See Agoro*, 2010 WL 9976, at *5 ("Even if [petitioner] files additional claims in an effort to prolong the removal process, his removal will still be considered reasonably foreseeable because any resulting delay will be caused by [petitioner's] own actions."); *Garcia v. Dep't of Homeland Sec.*, 422 F. App'x 7, 8 (2d Cir. 2011) (summary order) ("Garcia's removal has been stayed at his own request. This self-inflicted wound cannot establish grounds for a *Zadvydas* claim."); *Khemlal v. Shanahan*, 2014 WL 5020596, at *5 (S.D.N.Y. Oct. 8, 2014) (denying petition where the circumstances that rendered alien's removal not reasonably foreseeable were his own pending application for withholding of removal "and the likelihood that if withholding is denied he will appeal not only to the Board of Immigration Appeals but also to the Second Circuit"). *Accord Abimbola*, 181 F. App'x at 99; *Beckford*, 168 F. Supp. 3d at 538-39.

## CONCLUSION

Although Callender's circumstances are sympathetic, and his detention (however calculated) has been lengthy, "it is not indefinite in the sense that concerned the Supreme Court in *Zadvydas*." *Khemlal*, 2014 WL 5020596, at *5. For the reasons set forth above, petitioner has not shown that he is entitled to relief under *Zadvydas*, and has therefore failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" as required for habeas corpus relief under 28 U.S.C. § 2241(c)(3).

The petition is DENIED. The Clerk of Court is respectfully directed to close the case.

Dated: New York, New York
December 13, 2017

**SO ORDERED.**

_____
**BARBARA MOSES**
**United States Magistrate Judge**